URSULA DAYENIAN, Plaintiff-Appellant, *v.* AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, *et al.*, Defendants-Appellees.

First District (1st Division)    No. 80-262

Opinion filed December 8, 1980.

Michael S. Danian, of Waukegan, for appellant.

Rudnick & Wolfe, of Chicago (Jay A. Canel and Marc S. Lipinski, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Ursula Dayenian (plaintiff) brought this action for specific performance against 900/910 Lake Shore Drive Development Company and American National Bank and Trust Company of Chicago, as trustee under Trust No. 46033, (defendants), to compel the conveyance of a condominium unit to plaintiff. The trial court granted summary judgment for defendants. Plaintiff appeals.

The following facts appear from the motion for summary judgment and attached affidavits. (Ill. Rev. Stat. 1979, ch. 110, par. 57.) On July 14, 1978, plaintiff entered into a lease with Monticello Realty Corporation, agents for the lessor, to rent a unit in an apartment building from October 1, 1978, to September 30, 1980. On October 26, 1978, plaintiff signed a portion of the printed lease headed "ASSIGNMENT" which states:

> "For value received, the undersigned Lessee hereby assigns all the Lessee's right, title and interest in and to the within lease from and after December 1, 1978 unto W. Carlton Lambert * * *. It is expressly agreed this assignment shall not release or relieve the undersigned, as Original Lessee, from any liability under the covenants of the lease * * *."

On November 8, 1978, in a portion of the lease headed "ACCEPTANCE OF ASSIGNMENT," W. Carlton Lambert, described as "the undersigned Assignee," assumed "the obligations of said lease imposed on the Lessee and promises to make all payments and to keep and perform all conditions and covenants of the lease by the Lessee to be kept and performed commencing December 1, 1978 * * *."

Also on November 8, 1978, Monticello Realty Corporation executed a portion of the lease headed "CONSENT TO ASSIGNMENT" whereby it "consent[ed] to the above Assignment upon the express condition that Original Lessee shall remain liable for the prompt payment of the Rent and the keeping and performance of all conditions and covenants of the lease by the lessee to be kept and performed."

On March 13, 1979, the defendant 900/910 Lake Shore Drive Development Company mailed to W. Carlton Lambert a notice of intent to convert the apartment building into a condominium. This was apparently done to comply with section 30 of the Condominium Property Act (Ill. Rev. Stat. 1979, ch. 30, par. 330(a)) and Chicago Municipal Code §100.2—6C (1979) which in essence provide that any "tenant" who was a "tenant" on the date the notice of intent was given shall have the right of first refusal to purchase the apartment if he so responds within the time

allowed. W. Carlton Lambert never manifested an intent to purchase the unit and never responded within the time permitted. On May 31, 1979, the developer entered into a contract to sell the unit to another party.

Plaintiff contends she should have been given the right of first refusal to purchase the unit because she was the tenant of the apartment at the time the notice to convert was sent on March 13, 1979. She claims the transfer to W. Carlton Lambert should be construed as a sublease.

■■ The dispositive issue, therefore, is whether the transaction of December 1, 1978, constituted a sublease or an assignment. Whether the transaction is actually a sublease or an assignment is a question of law. See *Chemical Petroleum Exchange, Inc. v. Metropolitan Sanitary District* (1980), 81 Ill. App. 3d 1005, 1009, 401 N.E.2d 1203, and *Urban Investment & Development Co. v. Maurice L. Rothschild & Co.* (1975), 25 Ill. App. 3d 546, 551, 323 N.E.2d 588.

"The prime consideration in construing an instrument is to ascertain and effectuate the intention of the parties at the time of execution." (*Chemical Petroleum Exchange, Inc.*, 81 Ill. App. 3d 1005, 1009.) Generally, an assignment of a lease occurs "where the lessee transfers the entire unexpired remainder of the term created by his lease." (*Urban Investment & Development Co.*, 25 Ill. App. 3d 546, 551.) In other words, in an assignment one transfers his whole estate "without reserving a reversionary interest to himself [and] a privity of estate is immediately created between his transferee and the original lessor * * *." (*Danaj v. Anest* (1979), 77 Ill. App. 3d 533, 534, 396 N.E.2d 95; *Urban Investment & Development Co.*, 25 Ill. App. 3d 546, 551; R. Kratovil and R. Werner, Real Estate Law 471 (7th ed. 1979).) But if the transferor retains or reserves any reversionary interest, "the privity of estate between the transferee and the original lessor is not established and there is no assignment." *Danaj*, 77 Ill. App. 3d 533, 534; *Urban Investment & Development Co.*, 25 Ill. App. 3d 546, 551.

■ The plaintiff in the instant case transferred the entire remainder of her estate and did not retain any reversionary interest. The document stated she conveyed "all the Lessee's right, title and interest in and to the within lease from and after December 1, 1978 * * *." Upon this transfer, a privity of estate was immediately created between W. Carlton Lambert and the Monticello Realty Corporation, agents for the original lessor. This left plaintiff with no interest in the estate. Plaintiff remained only a surety to guarantee performance of the lease by the assignee, Lambert. We conclude an assignment was created here. "[A] lessee for a term of years who assigns his lease parts with all his rights thereunder." (*Bevelheimer v. Gierach* (1975), 33 Ill. App. 3d 988, 992, 339 N.E.2d 299.) Accordingly, plaintiff was not a tenant at the time notice to convert was given and plaintiff had no right of first refusal.

Plaintiff contends use of the term "sublease" by the parties in correspondence and office memoranda was evidence of an intent that plaintiff should retain a reversionary interest. Plaintiff depends upon a letter dated October 18, 1978, sent to plaintiff by management referring to the lease assignment as a "sublease form"; an office memorandum dated October 26, 1978, making the same reference; a letter dated November 8, 1978, to plaintiff's assignee from management using the word "subleasing"; and a management office memo dated November 8, 1978, using the word "sublet."

■■ We reject this argument. "[T]he legal effect to be given an instrument is not to be determined by the label it bears or the technical terms it contains * * *." (*Chemical Petroleum Exchange, Inc.*, 81 Ill. App. 3d 1005, 1009; *Urban Investment & Development Co.*, 25 Ill. App. 3d 546, 551.) As above shown, the document executed by plaintiff was simply and only an assignment. The language used by the parties in referring to the clear and unambiguous assignment of the lease is neither competent nor proper to attempt to vary its legal effect or determine its meaning. *Ruskin v. Rodgers* (1980), 79 Ill. App. 3d 941, 952, 399 N.E.2d 623.

For these reasons we find no genuine issue as to any material fact is presented by this record. The judgment appealed from is affirmed.

The following motions filed by the parties hereto, all taken with the case, are not germane and are not entertained:

> (1) Motion by defendants to dismiss this appeal for mootness; and
>
> (2) These motions all filed by plaintiff:
>
>> (a) Motion directing our attention to a status quo order in the trial court.
>>
>> (b) Motion for leave to plaintiff to file response to the motion of defendants.
>>
>> (c) Motion by plaintiff for leave to supplement her response.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.