## Patrick J. Sexton

*v.*

## The Chicago Storage Company *et al.*

*Filed at Ottawa June 15, 1889.*

1. Landlord and tenant—*assignment of the term, and a sub-letting, distinguished—rights of the original lessor, as to rent.* In case of an assignment of the term by a lessee, the assignee will stand in the shoes of his assignor as respects the covenant of the latter to pay rent, and the property of the assignee is liable to be distrained by the original lessor for the rent due him. But where the lessee merely sub-lets the premises, the sub-lessee is liable only on his own covenants to his landlord.

2. A leased certain tenements to B from the date of the lease, for the term named, and until the first day of May, 1888. Soon after, B leased the same premises to C, in the same language of his lease, and "for and during the term named," and until the first day of May, 1888, taking covenant, however, for a different amount of rent, with right to re-enter

for non-payment of rent when due, and declare the term ended: *Held,* that this amounted to an assignment of the term by B to C, and was not merely a sub-lease, and that C became liable to A on B's covenants to pay rent.

3. Where a lessee assigns his whole estate in the premises demised, without reserving to himself a reversion therein, a privity of estate is at once created between his assignee and the original lessor, and the latter will have a right of action directly against the assignee on the covenants running with the land, one of which is to pay rent. But if the lessee merely sub-lets the premises, reserving or retaining any reversion, however small, a privity of estate between the sub-lessee and the original landlord is not established, and the latter will have no right of action against the former, there being neither privity of contract nor privity of estate between them.

4. If the entire leasehold estate is transferred, the instrument will operate as an assignment, notwithstanding that words of demise instead of assignment are used, and notwithstanding the reservation of a rent to the grantor, and a right of re-entry on the non-payment of rent, or the non-performance of the other covenants contained in the instrument. The relation of landlord and tenant as between the original lessor and the assignee of the term does not result from contract, but from privity of estate.

5. So where the original lessee has divested himself of his entire term, and thus ceased to be in privity of estate with the original landlord, his assignee must necessarily be in privity of estate with the original landlord, and hence is liable as assignee of the term.

6. The original lessee, however, by the assignment of his lease, is not released from the payment of the rent covenanted by him to be paid, but still remains liable therefor; and his assignee becomes liable on the same covenant because of his privity of estate, and because the covenant to pay rent runs with the land, and the original landlord may sue either the original lessee or the assignee, upon such covenant.

7. SAME—*privilege to extend the term—character of the right.* A privilege reserved in a lease, permitting the tenant, on notice, to extend the term for one or more years, is not a present demise, but a mere covenant, which may be specifically enforced in chancery, or upon which an action at law may be maintained for its breach.

8. If a lessee executes a lease for a part of his term, with the privilege of his tenant to extend his lease for the remainder of his lessor's term, on notice of his election to do so, the reversion will not pass to such sub-lessee until such election is made; and the sub-lessor will still have a reversionary interest, subject, though it may be, to be thereafter divested by such election; and the lease of the original lessee will not amount to an assignment of his term, but only to a sub-lease.

9. SAME—*right of entry for breach of condition subsequent—character of the right.* The right to enter for breach of a condition subsequent is not a reversion, nor is it an estate in land, but it is a mere chose in action, and when enforced, the grantor is in by the forfeiture of the condition, and not by the reverter. This rule is not changed by section 14 of our statute relating to landlord and tenant.

10. SAME—*clause against assignment or sub-letting—who may avail of it.* A covenant or clause in a lease that neither the lessee nor his heirs, etc., will underlet any part of the demised premises, or assign the lease, is for the benefit of the lessor alone. He may waive it if he will, and if he does not choose to set it up, no one else can.

11. SAME—*estoppel to collect rent—by garnishment of the assignee of the term.* A landlord, by bringing suit by attachment against his lessee for rent due, and garnisheeing an assignee of his lessee for money due such original lessee, will not be estopped from enforcing the liability of the assignee to pay the rent, where no judgment is taken against the garnishee for rent due from him to his assignor.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Patrick J. Sexton executed two leases to Frank F. Cole, the first bearing date March 6, 1885, and demising the four upper floors of the building situated on the north-west corner of Van-Buren street and Fourth avenue, in Chicago, with right of way, etc.; and the second bearing date May 1, 1885, demising the basement of the same building. Both terms are expressed to be "for, during and until the first day of May, 1888." A stipulated rent is covenanted to be paid by the lessee to the lessor, in monthly installments, and it is also covenanted that neither the second party, nor his heirs, etc., will underlet said premises, or any part thereof, or assign this lease, without the written assent of the said party of the first part had and obtained thereto. It is covenanted that if the rent, or any part thereof, shall be behind or unpaid on the day of payment, or if default shall be made in any of the covenants, etc., to be kept by the second party, his heirs, executors and administrators, or his assigns,—should said premises be underlet, as provided for in

the leases,—it shall be lawful for said party of the first part, at his election, the said premises again to repossess; and it shall be the duty of the said party of the second part, and also of his assigns, in case the leases are assigned, or in case said premises be sub-let, as aforesaid, to pay the said rent as the same shall fall due from time to time, as above, to the said party of the first part; and there are also the usual covenants by the lessee and his assigns, etc., for a lien on the property, and for the surrender of the possession of the premises immediately after the determination of the term, or if the term be declared ended, and for the forcible taking of possession, or confession of judgment if guilty of forcible detainer, releasing errors, etc., for re-letting by the lessee, etc., in case of default in paying rent, etc., and that "all the covenants and agreements therein contained shall extend to and be obligatory upon * * * the heirs, executors and administrators of said party of the second party, and also on his assigns, should the leases be assigned, or should said premises be underlet, as aforesaid."

On the 9th of May, 1885, Frank F. Cole executed a lease, demising the premises thus demised to him, to the Chicago Storage Company, from that date "for and during and until the first day of May, 1888." There are covenants in this instrument for the payment of rent by the storage company to Cole, but the amounts are less for the first year or so, and larger afterwards, than the amount covenanted to be paid by Cole to Sexton. There are also further covenants therein, that if the rent shall be unpaid when due, or if default shall be made in any of the other covenants of the storage company, Cole may declare the term ended, and re-enter into the premises, etc.; and that the storage company will surrender possession to Cole immediately upon the determination of said term, or whenever Cole shall elect to declare the term ended. The storage company entered into possession under this instrument, and retained it for a period of about ten months,

21—129 Ill.

when it was dispossessed by Sexton, because of the non-payment of rent due Sexton by the terms of the leases executed by him to Frank F. Cole.

The Chicago Storage Company was incorporated by virtue of a license issued by the Secretary of State on the 21st of May, 1882. The stockholders are Charles N. Chipman, Alfred Wilford, James B. Craney, John C. Magee, Charles G. Barth, W. R. Parks, David Cole, and Kenneth R. Smoot. The evidence shows that the storage company has never transacted any business other than that of storage, and that only during the time it occupied the premises of Sexton under its lease from Frank F. Cole; that but little, if any, of its capital stock has ever been paid into its treasury; that it owns no real estate, and that its personal estate has been seized by Sexton for rent, and that it is of less value than the amount due him on his lease to Frank F. Cole.

Sexton commenced proceedings in the Superior Court of Cook county, by attachment, against Frank F. Cole, for rent due on the lease to Cole, on the 23d of October, 1885, and had the Chicago Storage Company garnisheed as a debtor of Cole. Answer was filed, on behalf of the company, to the interrogatories propounded by Sexton, claiming that it, as sub-lessee of Cole, was, by reason of Cole's refusal to pay his rent to Sexton, imperiled in its right to continue in possession, and consequently damaged to an amount in excess of the rent due from it to Cole. Another suit by attachment was commenced by the same party, against the same party, in the same court, on the 1st of March, 1886, for rent accruing after the commencement of the first suit by attachment, and the same garnishee proceedings were thereon had as in the first suit. Both these suits seem to be still pending. On the 1st of March, 1886, Sexton also caused a judgment of the Superior Court of Cook county to be entered against Frank F. Cole, for a forcible detainer of the premises leased to him, by virtue of the power of attorney authorizing a confession of such judg-

ment, which is contained in the lease, and Sexton was soon thereafter placed in possession of the leased premises by virtue of a writ of possession issued upon such judgment.

On the 23d of December, 1886, Sexton filed his bill in chancery, in the Superior Court of Cook county, against the Chicago Storage Company, and Charles N. Chipman, Alfred Wilford, James B. Craney, John C. Magee, Charles G. Barth, W. R. Parks, David Cole and Kenneth R. Smoot, as stockholders of that company, alleging, among other things, that the lease of Frank F. Cole to the storage company was an assignment of his term, and that consequently that company is liable for the rent due on the lease from Sexton to Cole, and that the storage company has ceased to do business, leaving debts unpaid, and praying that an account be taken of the amount due from the storage company, as assignee of the term of Frank F. Cole, to Sexton, and that the stockholders be decreed to pay such sum as shall be sufficient to pay the same. Answers were filed and evidence was heard on the issues; and the court, on final hearing, decreed that the complainant's bill be dismissed, and that decree, on writ of error from the Appellate Court for the First District, was affirmed. This appeal is from that judgment of affirmance.

Mr. ALEXANDER S. BRADLEY, for the appellant:

The transfer from Frank F. Cole to the storage company was, in legal effect, as between appellant and said company, an assignment of the term; and it was indebted to appellant for the rent by privity of estate. 1 Taylor on Landlord and Tenant, sec. 16; Wood on Landlord and Tenant, p. 542, sec. 330, and p. 130, sec. 93, and note; Jackson & Gross on Landlord and Tenant, 536; *Krider* v. *Riley,* 79 N. C. 357; *Lloyd* v. *Cozzens,* 2 Ashen. 131; Woodfall on Landlord and Tenant, 204; *Adams* v. *Beach,* 1 Phil. 178; *Webster* v. *Nichols,* 104 Ill. 172; *Babcock* v. *Scoville,* 56 id. 461.

The right to forfeit, reserved by appellant in his lease, was waived by him. The acceptance of rent from the company was a waiver. *Webster* v. *Nichols*, 104 Ill. 160; *Watson* v. *Fletcher*, 49 id. 498; *Field* v. *Herrick*, 101 id. 110.

Appellant is not estopped to claim that the company owes him. The covenant to pay rent in the event of a tenant's alienation, affords the landlord a double claim for the payment of his rent. Taylor on Landlord and Tenant, secs. 371, 436; Woodfall on Landlord and Tenant, 207; Wood on Landlord and Tenant, 847; *Sutliff* v. *Atwood*, 15 Ohio St. 194.

Acceptance of rent from an assignee of the lessee on account of the lessee does not discharge the lessee. *Field* v. *Herrick*, 101 Ill. 116; *Stein* v. *Jones*, 18 Bradw. 545; *Harris* v. *Heackman*, 62 Iowa, 411; *Taylor* v. *Debus*, 31 Ohio St. 468.

Mr. JOHN N. JEWETT & JEWETT BROS., also for the appellant.

Mr. KENNETH R. SMOOT, and Messrs. MONK & ELLIOTT, for the appellees:

An under-tenant is not liable upon his lessor's covenants to pay rent, for the want of any privity of estate. (*Quackenboss* v. *Clark*, 12 Wend. 555; *Harvey* v. *McGrew*, 44 Texas, 412; *Jennings* v. *Alexander*, 1 Hilt. 154; *Halfud* v. *Hatch*, 1 Doug. 183.) Nor for use and occupation. *Bancroft* v. *Wardwell*, 13 Johns. 488; *Hall* v. *Southmayd*, 15 Barb. 32; *Krider* v. *Ramsey*, 79 N. C. 354; *Merrill* v. *Bulloch*, 105 Mass. 486; *Way* v. *Holton*, 46 Vt. 184.

A lessee can recover from his assignee only when he has himself paid the rent to the lessor. *Farrington* v. *Kimball*, 126 Mass. 313.

The lessee becomes a surety to the lessor for the assignee, who, as between himself and the lessee, is the principal debtor, and bound, whilst he is assignee, to pay the rent and perform the covenants running with the estate; and the lessee has thereby, after paying the debt or discharging the obligation to

which he is liable, his remedy over against the assignee, the principal debtor. *Farrington* v. *Kimball,* 126 Mass. 313, and cases cited; *Burnett* v. *Lynch,* 5 B. & C. 589; *Humble* v. *Langston,* 7 M. & W. 517; *Moule* v. *Garrett,* L. R. 5 Ex. 132; L. R. 7 Ex. 101.

Assuming a waiver by complainant of the condition against the assignment, the transfer from the original lessee to the corporation defendant was, in legal effect as well as in form, a sub-lease, and not an assignment.

The right of re-entry for condition broken, reserved by the sub-lease, and the covenant to surrender to the sub-lessor at the expiration of the term, by forfeiture or otherwise, left in the sub-lessor a contingent reversionary interest sufficient to support a sub-lease, and to take from the instrument the character of an assignment. *Piggot* v. *Mason,* 1 Paige, 412; *Post* v. *Kearney,* 2 Comst. 394; *Keteltas* v. *Coleman,* 2 E. D. Smith, 408; *Martin* v. *O'Connor,* 43 Barb. 514; *Collins* v. *Hasbrouck,* 56 N. Y. 157; *Ganson* v. *Tift,* 71 id. 48; *McNeill* v. *Kendall,* 128 Mass. 245; *Dunlap* v. *Bullard,* 131 id. 161; *Collamer* v. *Kelley,* 12 Iowa, 319; *United States* v. *Hickey,* 17 Wall. 9; Taylor on Landlord and Tenant, (8th ed.) sec. 16; 1 Washburn on Real Prop. (5th ed.) 543, 544.

The condition in the original lease forbidding assignment was never waived by Sexton, and hence the company never became liable as assignee. *Bliss* v. *Gardner,* 2 Bradw. 422; *Wadham* v. *Marlowe,* 8 East, 314.

Complainant is estopped by his conduct to assert that the company ever held as assignee. Bigelow on Estoppel, (4th ed.) 642-655; *Durando* v. *Lyman,* 2 Sandf. 597.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The evidence sufficiently proves that the Chicago Storage Company has "ceased doing business." This is not contested by counsel for appellees, though they seek to avoid its effect by the circumstance, which they claim to be proved, that such

failure is solely because of the seizure and appropriation of its property for the payment of rent due from Frank F. Cole alone, to appellant. It is therefore manifest, that in determining whether the corporation has left debts unpaid, so as to bring the case within section 25, chapter 66, of the Revised Statutes of 1874, as amended by the act of May 22, 1877, in relation to corporations, (Laws of 1877, p. 66,) the first and most important question is whether the storage company is an assignee of the term of Frank F. Cole, or only a sub-lessee under him, for if it is an assignee of the term of Frank F. Cole, it stands in his shoes as respects his covenant to pay rent, and its property is liable to be seized and appropriated to the payment of the rent, by distress, as was done. If, however, it is but a sub-lessee under Frank F. Cole, it is liable only on its covenants to him.

The leases to Frank F. Cole are "for and during" the terms named, "and until the 1st day of May, 1888." The lease executed by Frank F. Cole to the Chicago Storage Company is of precisely the same premises included by the leases to him, and it is in the identical language of those leases, "for and during" the term named, "and until the 1st day of May, 1888," so that the terms all end at the same instant of time. No space of time, however minute, therefore can, by any possibility, remain after the term of the storage company has ended, before the expiration of the terms of Cole, in which he could enter upon or accept a surrender of the premises.

The general principle, as held by all the authorities, is, that where the lessee assigns his whole estate, without reserving to himself a reversion therein, a privity of estate is at once created between his assignee and the original lessor, and the latter then has a right of action directly against the assignee on the covenants running with the land, one of which is that to pay rent; but if the lessee sub-lets the premises, reserving or retaining any reversion, however small, the privity of estate between the sub-lessee and the original landlord is not estab-

lished, and the latter has no right of action against the former, there being neither privity of contract nor privity of estate between them. The chief difficulty has been in determining what constitutes such reservation of a reversion. The more recent English decisions, and all of the text books treating of the question which have been accessible to us, hold that where all of the lessee's estate is transferred, the instrument will operate as an assignment, notwithstanding that words of demise instead of assignment are used, and notwithstanding the reservation of a rent to the grantor, and a right of re-entry on the non-payment of rent or the non-performance of the other covenants contained in it. 1 Platt on Leases, pp. 1-9, 102; Woodfall on Landlord and Tenant, (7th ed.) 211; Wood on Landlord and Tenant, p. 131, sec. 93; Taylor on Landlord and Tenant, (8th ed.) 16, note; 5 Bacon's Abridgment, title "Leases," sec. 3; 2 Preston on Covenants, 124, 125; *Boardman* v. *Wilson,* L. R. (4 C. P.) 57; *Doe* v. *Bateman,* 2 B. & A. 168; *Wollaston* v. *Hakewell,* 3 Scott, (N. C.) 616. Undoubtedly many cases may be found wherein the lessee has granted to another party his entire term, retaining no reversionary interest in himself, and it has been held the relation as between the parties was that of landlord and tenant,—or, perhaps more correctly, lessee and sub-lessee,—because such was clearly the intention of the parties; but this was the result of contract, only, and not conclusive upon the original landlord, since he was not a party to it. The relations of landlord and assignee of a term, however, it has been seen, do not result from contract, but from privity of estate, and, therefore, when the original lessee has divested himself of his entire term, and thus ceased to be in privity of estate with the original landlord, the person to whom he has transferred that entire term must necessarily be in privity of estate with his original landlord, and hence liable as assignee of the term. See Wood on Landlord and Tenant, p. 132, and authorities cited in note 1; *Van Rensseller* v. *Hays,* 19 N. Y. 601; *Pluck* v. *Diggs et al.* 5 Bligh, (N. S.)

31; *Thorne* v. *Woolcome,* 5 B. & A. 586; *Ind. Manf. Co.* v. *C. C. C. I. Ry. Co.* 45 Ind. 281; *Smiley* v. *Van Winkle,* 6 Cal. 605; *Blumenberg* v. *Myers,* 32 id. 93; *Schilling* v. *Holmes,* 23 id. 230.

Counsel for appellees contend, and the courts below ruled accordingly, that the reservation of a new and different rent, or the reservation to the lessor of the right to declare the lease void for the non-performance of its covenants, and to re-enter for such breach, or at the end of the term, coupled with the covenant of the lessee to surrender at the end of the term or upon forfeiture of the term for breach of covenant, make the letting by the lessee a sub-letting, and not an assignment of the term, notwithstanding the lessee has retained in himself no part of the term,—and they rely upon *Collins* v. *Hasbrouck,* 56 N. Y. 157, *Ganson* v. *Tifft,* 71 id. 48, *Neil* v. *Kendall,* 128 Mass. 245, and *Dunlap* v. *Bullard,* 131 id. 161, as sustaining this contention.

There is general language in *Collins* v. *Hasbrouck* quite as broad as claimed. But no question therein presented called for its use, and its meaning ought to be limited by the facts to which it was applied. There, the first original lease was for the term of ten years, from the 1st of April, 1864; the second was for the term of nine years, from the 1st of April, 1865. Thus, both expired April 1, 1874. The sub-lease was for the term of two years and seven months, from the 1st of September, 1867,—that is to say, until the 1st of April, 1870, —with the privilege, however, to the lessee to extend the term four years, or until April 1, 1874, by giving two months' notice, etc. The plaintiffs claimed that the leases were forfeited by the sub-letting, and the court so held. No distinction was taken, in the opinion of the court, between an absolute demise until the end of the term and a mere privilege to have the demise extended four years, which was until the end of the term. We have held that a similar clause in a lease is not a present demise, but a mere covenant, which may be specifically enforced.

in chancery, or upon which an action at law may be maintained for a breach of covenant. *(Hunter* v. *Silvers,* 15 Ill. 174; *Sutherland* v. *Goodnow,* 108 id. 528.) And it would seem quite evident, that in no view could the reversion have passed until after the grantee elected to have the term for four years longer, and so, when the lease was executed, there was still a reversionary interest in the sub-lessor, of four years, subject, though it may have been, to be thereafter divested by the election of the sub-lessee.

In *Ganson* v. *Tifft,* the sub-lease provided that at the expiration of the term, or other sooner determination of the demise, the lessee should surrender the demised premises to the lessor, and the court said: "This constitutes a sub-lease of the premises, and not an assignment of the term."

In *Stewart* v. *Long Island Railroad Co.* 102 N. Y. 601, (55 Am. Rep. 844,) there was a demise by the lessee to the Long Island Railroad Company for a term longer than that held by the lessee. There was also a different rent to be paid than that provided to be paid by the original lease, and there was a reservation of the right to re-enter for non-payment of rent, etc. It was held, that as to the original landlord this amounted to an assignment of the lease, and that its character was not destroyed by the reservation therein of a new rent to the assignor, with a power of re-entering for non-payment of rent, or by its assumption of the character of a sub-lease. The court, after laying down the rule substantially as we have heretofore stated it to be recognized by the text-books and recent English decisions, said: "The effect, therefore, of a demise, by a lessee, for a period equal to or exceeding his whole term, is to divest him of any reversionary right, and render his lessee liable, as assignee, to the original lessor; but, at the same time, the relation of landlord and tenant is created between the parties to the second demise, if they so intended,"—citing Taylor on Landlord and Tenant, (7th ed.) 109, note s, 16, n. 5; 1 Washburn on Real Estate, (4th ed.) 515, n. 6; *Adams* v. *Beach,*

1 Phil. 99; *Ind., etc., Railroad Co.* v. *Cleveland, etc., Railroad Co.* 45 Ind. 281; *Lee* v. *Payn*, 4 Mich. 106; *Lloyd* v. *Cosens*, 1 Ashm. 138; Wood on Landlord and Tenant, (Bank's ed.) 347,—and then adding: "These rules are fully recognized in this State. *Prescott* v. *Deforest*, 16 Johns. 159; *Bedford* v. *Terhune*, 30 N. Y. 457; *Davis* v. *Morris*, 36 id. 569; *Woodhull* v. *Rosenthal*, 382, 391, 392."

In speaking of the ruling in *Collins* v. *Hasbrouck, supra,* after stating the facts, the court said: "In the opinion, the question is discussed whether the sub-lease amounted to an assignment of the term of the original lease, or a mere subletting or re-letting of part of the demised premises. This question, in view of the result reached on the question of waiver, ceased to be controlling; but, in discussing it, the learned judge delivering the opinion made some remarks touching the effect of reserving a new rent in the sub-lease, and of reserving to the original lessee a right of re-entry for a breach of condition by his lessee, which have given rise to some confusion. The features of the instrument which are above referred to would be proper subjects of consideration for the purpose of determining whether the relation of landlord and tenant was created between the original lessee and his lessor, and bore upon the question then before the court, viz., whether the second lease was a sub-letting or re-letting of part of the demised premises, which constituted a breach of the covenant not to sub-let or re-let. But the question of privity of estate between the original lessor and the lessee of his lessee, was not in the case. The determination of the question depends upon whether the whole of the term of the original lessee became vested in his lessee, and the circumstances that the second lease reserves a different rent or a right to entry for breach of condition, are immaterial." And, after quoting many authorities to sustain that position, the opinion proceeds: "The cases which hold that where a lessee sub-leases the demised premises for the whole of his term, but his lessee covenants to

surrender to him at the end of the term, the sub-lease does not operate as an assignment, proceed upon the theory that by reason of this covenant to surrender, some fragment of the term remains in the original lessor [lessee.] In most of the cases, and in the earlier cases in which this doctrine was broached, the language of the covenant was, that the sub-lessee would surrender the demised premises on the last day of the term."

It is true that in this case, as has been before stated, the lessee demised for a number of years beyond the term for which he held; but it is impossible that, upon principle, there can be any difference between a demise of an entire term, which can leave no possible space of time remaining in the lessor, and a demise for any additional time beyond the term, for since no one can demise what he does not have, all that can pass by the demise, in the latter instance, is the entire term of the lessor. If, here, the demise of Frank F. Cole vests his entire interest in the property, as it professes to do, "for and during" the remainder of his term, "and until the 1st day of May, 1888," it can not be that any portion, however short in duration, of the term granted him by the leases of appellant, remained in him, because they are limited by the same words precisely,—namely, "for and during" the term, "and until the 1st day of May, 1888."

In *McNeil* v. *Kendall, supra,* there were easements reserved from the effect of the lease. In *Bullard* v. *Dunlap, supra,* however, the facts are analogous in principle to those here involved, and it was held that the demise of the entire term of the lessee was a sub-lease, and not an assignment, because of the right reserved in the lease for the lessor to re-enter and resume possession for a breach of the covenants. But this is held upon the ground, that under the decisions of that court the right to re-enter and forfeit the lease is a contingent reversionary estate in the property, the court having previously held, in *Austin* v. *Cambridgeport Parish*, 21 Pick. 215, *Brattle Square Church* v. *Grant*, 3 Gray, 142, that where an estate is

conveyed, to be held by the grantee upon a condition subsequent, there is left in the grantor a contingent reversionary interest, which is an estate capable of devise. It has been suggested that these decisions are predicated upon a local statute; (see Tiedeman on Real Prop. note 1 to sec. 277, and note 1, on p. 904, 6 Am. & Eng. Ency. of Law;) but whether this be true or not, the decisions are plainly contrary to the principles of the common law.

The right to enter for breach of condition subsequent could not be alienated, as it could have been had it been an estate, and Coke says: "The reason hereof is for avoiding of maintenance, suppression of right and stirring up of suits, and therefore nothing in action entrie or re-entrie can be granted over." See, also, 1 Comyn's Digest, title "Assignment," chap. 2, p. 688; 3 id. title "Condition," (O. 1,) p. 129; 4 Kent's Com. (8th ed.) 126, *123; 1 Preston on Estates, 20, *21; Shepherd's Touchstone, 117, *121.

It is said in 1 Washburn on Real Prop. (2d ed.) 474, *451: "Such a right" (*i. e.*, to enter for breach of condition subsequent,) "is not a reversion, nor is it an estate in land. It is a mere chose in action, and, when enforced, the grantor is in by the forfeiture of the condition, and not by the reverter." To like effect is, also, Tiedeman on Real Prop. sec. 277; 6 Am. & Eng. Ency. of Law, p. 903; Taylor on Landlord and Tenant, (8th ed.) sec. 293; *Southard* v. *C. R. R. Co.* 26 N. J. L. (2 Dutch.) 21; *Webster* v. *Cooper,* 14 How. 501; *Schulenberg* v. *Harman,* 21 Wall. 63; *Nicoll* v. *N. Y. and E. Railroad Co.* 12 N. Y. (2 Kern.) 121.

It is true, that by section 14 of our statute in relation to landlord and tenant, (Rev. Stat. 1874, p. 659,) "the grantees of any demised lands, tenements, rents or other hereditaments, or of the reversion thereof, the assignee of the lessor of any demise, and the heirs and personal representatives of the lessor, grantee or assignee, shall have the same remedies, by entry, action or otherwise, for the non-performance of any

agreement in the lease, or for the recovery of any rent, or for the doing of any waste, or other cause of forfeiture, as their grantor or lessor might have had if such reversion had remained in such lessor or grantor." But this does not make what was before but a chose in action, an estate. The right to enter for breach of covenant is still but a remedy for enforcing performance of a contract, which may be defeated by tender. Taylor on Landlord and Tenant (8th ed.) 302. As is said by the court in *DePeyster* v. *Michael,* 6 N. Y. (2 Seld.) 507, in speaking of the effect of a like statute of New York: "The statute only authorized the transfer of the right, and did not convert it into a reversionary interest, nor into any other estate." See, also, *Nicoll* v. *N. Y. and E. Railroad Co.* 12 N. Y. (2 Seld.) 139.

It follows that, in our opinion, the rule assumed to be followed in *Collins* v. *Hasbrouck, Ganson* v. *Tifft,* and *Dunlap* v. *Bullard, supra,* is not in conformity with the common law, and that it can not, therefore, be applied here.

The objection that the written assent of appellant was not obtained to the assignment, can not be urged by appellees. The clause in the leases, in that respect, is for the benefit of, and can be set up by, appellant alone. He may waive it if he will, and if he does not choose to set it up no one else can. *Webster et al.* v. *Nichols et al.* 104 Ill. 160 ; *Willoughby et al.* v. *Lawrence et al.* 116 id. 11 ; *Arnsby* v. *Woodward,* 6 B. & C. 519 ; *Rale* v. *Farrar,* 6 M. & S. 121.

But counsel insist that appellant is estopped by his conduct to now allege that the instrument executed by Frank F. Cole is an assignment. We have carefully considered the evidence bearing upon this question, and we are unable to concur in this view. Appellant did refuse to acquiesce in the construction placed by appellees upon the lease of Frank F. Cole, and to settle with them upon that basis. He refused to release Frank F. Cole and accept the storage company alone, and he refused to accept the amount of rent which the storage com-

pany obligated itself to pay Frank F. Cole, as a satisfaction of Frank F. Cole's covenant to pay rent to him, but he was all the time willing that the storage company should remain in possession, provided the rent due him by his lease to Frank F. Cole was paid to him. He knew the terms of the lease of Frank F. Cole to the storage company, and he afterwards received rent from it, and permitted it to remain in possession. The lessee continues, notwithstanding the assignment, liable upon his express covenant to pay rent, and the assignee becomes liable upon the same covenant by reason of his privity of estate, because that covenant runs with the land. Taylor on Landlord and Tenant (8th ed.) sec. 438; 2 Platt on Leases, 356; *Walton* v. *Cranley,* 14 Wend. 63; *Bailey* v. *Wells,* 8 Wis. 141.

Since appellant might sue Cole on his express covenant to pay rent, and, he having fled the State, take out an attachment in aid thereof, we perceive no reason why he might not, at the same time, take garnishee process against the storage company and recover any debt which it owed him. There is certainly nothing in this inconsistent with his ultimately enforcing his liability against that company as assignee of Cole's term. It is not shown that the storage company has been, by anything done or said by appellant, induced to do, to its prejudice, anything that it would not otherwise have done. No judgment has been recovered against it, as garnishee of Frank F. Cole, for rent due from it to Frank F. Cole, nor does it appear otherwise to have been compelled to pay money or incur liability by reason of any act or word of appellant proceeding upon the recognition of its being liable to Frank F. Cole, as sub-lessee, only.

For the reasons given, the decree of the Superior Court and the judgment of the Appellate Court are reversed, and the cause is remanded to the Superior Court for further proceedings consistent with this opinion.

*Judgment reversed.*